IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHRYN M. VAN ORDEN, individually and as administratrix ad prosequendum of the Estate of Celena J. Sylvestri, <br><br> Plaintiff, <br><br> v. <br><br> BOROUGH OF WOODSTOWN, et al., <br><br> Defendants. | HONORABLE JEROME B. SIMANDLE <br><br> Civil Action No. 13-5002 (JBS/AMD) <br><br> **OPINION** |

APPEARANCES:

Thomas W. Sheridan, Esq.
Christopher D. Hinderliter, Esq.
SHERIDAN & MURRAY, LLC
403 South White Horse Pike
Audubon, NJ 08106
     Attorneys for Plaintiff

A. Michael Barker, Esq.
Vanessa Elaine James, Esq.
BARKER SCOTT & GELFAND, PC
210 New Road
Linwood Greene, Suite 12
Linwood, NJ 08221
     Attorneys for Defendants Borough of Woodstown, Woodstown
     Police Department and Pilesgrove Township

**SIMANDLE, Chief Judge:**

# I.   INTRODUCTION

Plaintiff Kathryn M. Van Orden is the mother of Celena J.

Sylvestri, who drowned in her car on August 28, 2011, after

officials opened floodgates to the Veterans Memorial Lake Dam in anticipation of the arrival of Hurricane Irene without closing the affected road.

Before the Court is a motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), by Defendants Borough of Woodstown, the Woodstown Police Department, and Pilesgrove Township. [Docket Item 27.] For the reasons explained below, the Court will grant the motion as it pertains to the state-law tort claims, which is unopposed, because Plaintiff failed to comply with the notice requirements of the New Jersey Tort Claims Act. However, the Court will deny the motion as to the state-created danger claim, which Plaintiff sufficiently pleads.

## II.  BACKGROUND

The Court accepts as true the facts asserted in the Complaint for the purposes of this motion. On August 28, 2011, at approximately 1 a.m., Celena Sylvestri was driving on Route 40 in Salem County, New Jersey, when her car was "swept away by fast-moving water." (Compl. ¶¶ 1, 8.) The water flowed from a floodgate at the Veterans Memorial Lake Dam ("the Dam") in Woodstown, New Jersey, which Defendants had opened "to relieve pressure and control flood waters" as Hurricane Irene approached. (Id. ¶¶ 2-3.)

At approximately 9:51 p.m. the previous evening, Defendants had announced their intention to open the floodgates and to

close Route 40 "within the next few hours due to flooding caused by the intentional release of water from the Veterans Memorial Lake Dam," but Defendants never blocked the road nor took any steps to prevent drivers from entering the path of the floodwater. (Id. ¶¶ 5-6.) Ms. Sylvestri, who had lost power at her apartment, was attempting to evacuate on Route 40 when her car was overtaken by "raging flood water." (Id. ¶¶ 6, 8.)

Plaintiff, individually and as administratrix of her daughter's estate, filed this lawsuit against eight named defendants, alleging various state-law tort claims and a state-created danger claim under 42 U.S.C. § 1983 for a violation of the Due Process Clause of the Fifth and Fourteenth Amendments.

The Court granted an unopposed motion to dismiss all claims and counterclaims by and against Defendants State of New Jersey, New Jersey State Police, and the New Jersey Department of Environmental Protection Bureau of Dam Safety and Flood Control [Docket Item 33], on the Eleventh Amendment immunity grounds. See Van Orden v. Borough of Woodstown, No. 13-5002, 2013 WL 6447163, at *1-*2 (D.N.J. Dec. 9, 2013).

Defendants Borough of Woodstown, Woodstown Police Department and Pilesgrove Township brought the present motion for judgment on the pleadings.

3

## III. STANDARD OF REVIEW

A motion for judgment on the pleadings based on the theory that plaintiff fails to state a claim is reviewed under the same standards that apply to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Caprio v. Healthcare Recovery Grp., LLC, 709 F.3d 142, 146-47 (3d Cir. 2013). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, which if accepted as true, states a facially plausible claim for relief." Id. at 147 (citing Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009). The court must construe the complaint in the light most favorable to the plaintiff. Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012).

## IV. DISCUSSION

### A. New Jersey Tort Claims Act (Counts I, II, IV, V & VI)

Defendants move to dismiss Counts I ("Negligence"), II ("Vicarious Liability"), IV ("Strict Liability"), V ("Wrongful Death Action"), and VI ("Survival Action") of the Complaint because Plaintiff did not comply with the notice requirements of the New Jersey Tort Claims Act ("TCA"), N.J.S.A. §§ 59:8-8, 59:8-9. (Def. Mot. [Docket Item 27] at 5-10.) Plaintiff does not

4

oppose dismissal. She states: "While the Plaintiff initially included negligence theories of liability against Defendants . . . at this time the Plaintiffs are only pursuing the State Created Danger Theory, under 42 U.S.C. § 1983, against the Moving Defendants . . . ." (Pl. Opp'n [Docket Item 39-1] at 1.) Because the Complaint does not contain assertions of compliance with the notice requirements of the TCA, because the record does not contain evidence of compliance, and because Plaintiff no longer seeks to pursue these claims, the Court will grant Defendants' motion for judgment on the pleadings as to Counts I, II, IV, V, and VI.

### B. State-created danger under 42 U.S.C. § 1983 (Count III)

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead that a person acting under the color of state law deprived the plaintiff of a constitutional right. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008). Here, Plaintiff alleges a deprivation of her Fifth and Fourteenth Amendment rights. (Compl. ¶ 75.)

"Individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." Phillips, 515 F.3d at 235. The Due Process Clause does not impose an affirmative obligation on the state to protect its citizens, id. (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195-96

5

(1989)), but courts "have recognized that a state actor may be held liable under the 'state-created danger' doctrine" when the following four conditions are met:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that had rendered the citizen more vulnerable to danger than had the state not acted at all.

Henry v. City of Erie, 728 F.3d 275, 281-82 (3d Cir. 2013) (citing Morrow v. Balaski, 719 F.3d 160, 177 (3d Cir. 2013)).

Defendants request judgment on the pleadings for the state-created danger claim because "the Complaint fails to allege any facts to suggest the level of culpability necessary," and because alleged inaction, such as failing to close Route 40, cannot form the basis of a claim. (Def. Mot. Br. at 10-11.) Specifically, Defendants argue that the Complaint fails to describe conduct that shocks the conscience (id. at 13), that no special relationship existed between Ms. Sylvestri and Defendants (id.), and that inaction is not legally cognizable under the state-created danger doctrine (id. at 16). Plaintiff

6

opposes the motion. The Court will consider each of the elements of the state-created danger claim in turn.

### 1. Affirmative use of state authority to create a danger

Because Defendants argue that the conduct alleged cannot form the basis for a state-created danger claim, the Court will begin with the fourth factor articulated in Henry, 728 F.3d at 282: whether Defendants affirmatively used their state authority in a way that created a danger to Plaintiff.

The Third Circuit has held repeatedly that it "is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Phillips, 515 F.3d at 235 (quoting Bright v. Westmoreland Cnty., 443 F.3d 276, 282 (3d Cir. 2006)) (emphasis in Phillips). The Third Circuit has refused to find affirmative use of state power when the police "'failed to more expeditiously seek someone's detention,'" or failed "to arrest someone who poses a threat." Walter v. Pike Cnty., 544 F.3d 182, 194 (3d Cir. 2008) (quoting Bright, 443 F.3d at 284, and citing Burella v. City of Phila., 501 F.3d 134, 147 (3d Cir. 2007)). Likewise, the state's "mere failure to warn of a threat" by a private actor "cannot itself predicate liability" under the state-created danger doctrine. Walter, 544 F.3d at 194-95.

On the other hand, the Third Circuit has found affirmative use of state authority when, for example, two 911 Call Center employees provided a suspended colleague with information that assisted him in locating a man he later shot and killed, Phillips, 515 F.3d at 236, and when police officers detained an intoxicated woman walking home from a tavern, letting her sober husband continue home, and eventually releasing the wife to walk home unescorted in cold weather, which caused her to suffer hypothermia and permanent brain damage, Kneipp v. Tedder, 95 F.3d 1199, 1209 (3d Cir. 1996).

Defendants liken the present case to Goss v. Alloway Twp. Sch., 790 F. Supp. 2d 221, 227 (D.N.J. 2011), in which the district court held that failure to add padding to a school playground or the failure to provide additional playground monitors was inaction, and therefore not legally cognizable under a state-created danger theory. In Goss, a first-grade student fell on the playground, which had a "cement-like surface," and suffered a displaced wrist fracture. Id. at 224. The plaintiff argued that the case "is about constitutional violations that resulted from Defendants' cost-cutting policies," but the district court dismissed the state-created claim because the school's failure to add padding or its allocation of resources were not affirmative acts for purposes of a state-created danger claim. Id. at 227.

Here, the affirmative act alleged is the opening of the Dam's floodgates in a reckless or deliberately unsafe manner. (See Compl. ¶¶ 4, 6; see also Pl. Opp'n [Docket Item 39-1] at 11 ("Defendants' affirmative act was to intentionally open the floodgates which caused Route 40 to become entirely inundated with raging flood waters").) While Ms. Sylvestri's death might have been avoided if Route 40 had been closed or blocked off, and, in that sense, the failure to close the road was a "direct" cause of her drowning, Plaintiff does not allege that the mere failure to close the road is the predicate conduct for her claim. (See Pl. Opp'n at 12 ("They opened the floodgates and this directly led to the inundation of Route 40 and the harm and death suffered by Celena.")) "'If the state puts a man in a position of danger . . . and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit.'" Morrow, 719 F.3d at 177 (quoting D.L. ex rel. L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1374 (3d Cir. 1992), and Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982)). Plaintiff alleges that Defendants' affirmative opening of the floodgates created a dangerous condition that would not have existed had state authority not been exercised, and then failed to protect her. The affirmative use of state authority has been satisfied.

Goss does not resemble the situation here. Providing a playground, even one which is not designed in a reasonably safe manner, is not the creation of a danger through misuse of state authority. Goss would be more analogous to this case if the school board had affirmatively removed existing protective padding from the playground while children climbed on the equipment, or removed essential screws or bolts or beams from playground structures to use them elsewhere and still permitted children to play in the unsafe environment. The present case is not about failing to take extra precautions to ensure safety of citizens from existing dangers; this is a case is about actions Defendants allegedly took that created a substantially more dangerous environment, a state-directed change of the roadway through flooding due to opening the floodgates. The Complaint is not deficient for failing to allege an affirmative use of state authority.

### 2. Foreseeable and fairly direct harm

It is not sufficient for state actors to act affirmatively; the harm created must be a "foreseeable and fairly direct" result of that action. Henry, 728 F.3d at 282.

"'To adequately plead foreseeability . . . , we require a plaintiff to allege . . . an awareness of risk that is sufficiently concrete to put the [state] actors on notice of the harm.'" Id. at 282-83 (quoting Phillips, 515 F.3d at 238). Here,

10

the harm that befell Ms. Sylvestri was a foreseeable result of opening the floodgates without closing Route 40. Plaintiff pleads that Defendants announced at approximately 10 p.m. that "they would be closing the Road within the next few hours due to flooding caused by the intentional release of water from the Veterans Memorial Lake Dam." (Compl. ¶ 5.) This announcement evinces Defendants' concrete awareness of the risk of harm that eventually occurred, which is the essence of foreseeability. Drowning is among the harms that realistically could result from opening floodgates without blocking affected roads. Ms. Sylvestri's injury was foreseeable.

In addition, the link between the affirmative act and the harm must be "fairly direct." To satisfy this requirement, "the plaintiff must plausibly allege that state officials' actions 'precipitated or w[ere] the catalyst for' the harm for which the plaintiff brings suit." Henry, 728 F.3d at 285 (quoting Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 910 (3d Cir. 1997)). It is "insufficient to plead that state officials' actions took place somewhere along the causal chain that ultimately led to the plaintiff's harm." Id. Here, Plaintiff alleges that Ms. Sylvestri drowned in a flood that Defendants created by opening a floodgate. It is difficult to imagine a more direct link between action and harm than the facts alleged here. Plaintiff

satisfies the "foreseeable and fairly direct" requirements of the state-created danger doctrine.

### C. Culpability that shocks the conscience

The level of culpability required to sustain a state-created danger claim depends on the particular circumstances of the case. Walter, 544 F.3d at 192 (quoting Miller v. City of Phila., 174 F.3d 368, 375 (3d Cir. 1999)). Where state officials are asked to make split-second decisions in "'a hyperpressurized environment,' an intent to cause harm is usually required . . . .'" Id. (quoting Sanford v. Stiles, 456 F.3d 298, 306 (3d Cir. 2006)). By contrast, "where officials are afforded the luxury of a greater degree of deliberation and have time to make 'unhurried judgments,' deliberate indifference is sufficient to support an allegation of culpability." Phillips, 515 F.3d at 240-41 (emphasis in original). The Third Circuit has recognized a middle-ground standard in other circumstances:

> [W]here the circumstances require a state actor to make something less exigent than a "split-second" decision but more urgent than an "unhurried judgment," i.e., a state actor is required to act "in a matter of hours or minutes," a court must consider whether a defendant disregarded a "great risk of serious harm rather than a substantial risk."

Id. at 241 (quoting Sanford, 456 F.3d at 306). The Third Circuit has described this middle-ground standard as: "gross negligence and arbitrariness -- the state actor must 'consciously

disregard[] a great risk of serious harm.'" <u>Walter</u>, 544 F.3d at
193.

Defendants argue that the highest level of culpability --
intent -- applies to this case. (Def. Mot. Br. at 11-13; Reply
at 5.) They assert that "an ever-changing emergency situation"
constituted a "hyper-pressurized" situation. (Reply at 5.)
Defendants argue that the Complaint pleads a plausible case of
negligence against Defendants but cannot support a state-created
danger claim because "'[n]egligence is not enough to shock the
conscience under any circumstances . . . .'" (Def. Mot. Br. at
12-13) (quoting <u>Schieber v. City of Phila.</u>, 320 F.3d 409, 419
(3d Cir. 2003)).

Plaintiff urges the Court to apply the lowest standard,
deliberate indifference. (Pl. Opp'n at 8-9.) According to
Plaintiff, Defendants were "aware for at least several days that
a Hurricane was proceeding toward the Northeastern United
States." (<u>Id.</u> at 9.) Plaintiff objects to comparing the time
horizon for decisions in this case to those of "a high speed
chase or prison riot." (<u>Id.</u>)

According to the Complaint, Defendants had at least several
hours "to prepare and/or implement a plan for dealing with the
storm's potential effects," before opening the floodgates later

"[t]hat evening."[1] (Compl. ¶¶ 2-3.) Accepting this characterization as true, and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that the standard of intent to cause harm does not apply here. The Third Circuit's middle-ground standard applies when the state actors have "a matter of hours or minutes" to act. Phillips, 515 F.3d at 241. At most, the middle-ground standard applies to this case as pleaded.

The Complaint adequately pleads that Defendants "disregarded a great risk of serious harm," id., when they decided to open the Dam's floodgates without closing Route 40. Defendants' conscious disregard of the risk may be inferred from the fact that they issued a statement of their intent to close the road due to flooding.[2] (Compl. ¶ 5.) It also may be reasonably inferred that causing "millions of gallons of water"

---

[1] Plaintiff attaches to her opposition a press release from August 26, 2011, describing the planning form efforts of Salem County officials. (Pl. Opp'n Ex. B.) While this may support the allegation in the Complaint that Defendants did not make a split-second decision to open the floodgates, the Court does not rely on this Exhibit in reaching its holding.

[2] Defendants argue that merely giving assurances that they would be closing the Route 40 cannot ground liability, "because assurances of future action cannot form the basis of a state created danger claim." (Reply at 6 n.4 (citing Bright, 443 F.3d at 284)). However, as explained above, Plaintiff does not allege that a duty to protect arose from such assurances; Plaintiff argues that the duty to protect arose from opening floodgates in an unsafe manner, which resulted in abnormally dangerous conditions on Route 40.

to rush "into the Salem River and consume bridges and roadways downstream including Route 40" involves a great risk of serious harm to anyone who may be in the path of the sudden rush of the released water. (Compl. ¶ 43.) Plaintiff specifically asserts that Defendants "knew that their actions could result in great harm to drivers travelling on Route 40," but did not close the road. (Id. ¶ 47.) Releasing "raging flood water" capable of enveloping roads and bridges and causing serious bodily injury or death, without taking safety measures to protect citizens, certainly could be considered conduct that shocks the conscience. (Id. ¶¶ 43, 46.) Plaintiff has alleged that Defendants acted in deliberate disregard of a great risk of serious harm.[3]

### D. Foreseeable victim and discrete class of plaintiffs

The final element of a state-created danger claim, which requires some relationship to exist between the state and the plaintiff, presents the most difficult question in this case. The plaintiff must plead that

> a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential

---

[3] Evidence yet to emerge may shed additional light on the time constraints and amount of pressure under which Defendants acted. Accordingly, the degree of culpability to be proven ultimately may be different from the middle-ground standard that applies to the Complaint as pleaded.

15

harm brought about by the state's actions, as opposed
to a member of the public in general.

Henry, 728 F.3d at 282. The Third Circuit described the pleading

requirements succinctly in Phillips:

> a plaintiff need not plead facts that show the same
> 'special relationship' basis for constitutional
> liability. Morse, 132 F.3d at 912. Instead, the
> relationship requirement of the third element
> 'contemplates some contact such that the plaintiff was
> a foreseeable victim of the defendant's acts in a tort
> sense.' Morse, 132 F.3d at 912. The relationship that
> must be established between the state and the
> plaintiff can be 'merely' that the plaintiff was a
> foreseeable victim, individually or as a member of a
> distinct class. See Rivas[v. City of Passaic, 365 F.3d
> 191, 202 (3d Cir. 2004)]. Such a relationship may
> exist where the plaintiff was a member of a discrete
> class of persons subjected to the potential harm
> brought about by the state's actions. Morse, 132 F.3d
> at 913; Rivas, 365 F.3d at 197.

Phillips, 515 F.3d at 242. The doctrine does not require

"knowledge that a specific individual has been placed in harm's

way. . . . The ultimate test is one of foreseeability." Morse,

132 F.3d at 914. The relationship must be "sufficiently close to

exclude 'those instances where the state actor creates only a

threat to the general population,' but not so restrictive as to

limit 'the scope of § 1983 to those instances where a specific

individual is placed in danger.'" Rivas, 365 F.3d at 197.

Defendants move for judgment on the pleadings on the

grounds that the failure to close Route 40 is an alleged danger

directed to the public in general, not a discrete class. (Def.

Mot. Br. at 14.) In their reply brief, Defendants focus on

16

Morse, in which contractors working on construction projects at a public high school left the back entrance to the school ajar, permitting a local resident to gain access to the building and shoot a teacher. Morse, 132 F.3d at 904. The Third Circuit affirmed the district court's dismissal of the complaint, holding that the "deadly attack was not a foreseeable and fairly direct result of defendants' behavior." Id. at 915-16. In its discussion, the court declined to reach the issue of whether the teacher and the students in the school "were a sufficiently discrete group of persons who could have been foreseeable victims of an armed and dangerous intruder. This is by no means an easy question, for the reasons we have expressed." Id. at 914.

Defendants argue that if Morse posed a difficult "discrete class" question, "it stands to reason that a potential plaintiff class which amounts to, at best, every New Jersey citizen who could operate a vehicle within driving distance of Route 40 at the time of the hurricane, is even less likely to constitute a 'discrete class.'" (Reply at 10.)

Defendant compares the present case to Mark v. Borough of Hatboro, 51 F.3d 1137 (3d Cir. 1995). (Def. Mot. Br. at 14; Reply at 8.) In Mark, a member of a volunteer fire department, while acting as a private citizen, set fire to the plaintiff's auto repair business. Mark, 51 F.3d at 1138, 1150. The plaintiff

17

alleged that the state actors' "failure to follow adequate policies to ensure that applicants to the fire department were screened sufficiently for tendencies towards arson caused the damage to his property." Id. at 1140. The Third Circuit affirmed the grant of summary judgment. Id. at 1153. The court stated: "When the alleged unlawful act is a policy directed at the public at large . . . there can be no specific knowledge by the defendant of the particular plaintiff's condition, and there is no relationship between the defendant and the plaintiff." Id. Defendant asserts that the danger here is to the general public, as in Mark. (Reply at 8.)

As Plaintiff points out, the Third Circuit distinguished Mark and embraced a wider concept of the discrete, foreseeable plaintiff in Morse. The court observed that

> Mark involved a claim in which the alleged "act" was a policy directed at the public at large . . . . Where the state actor has allegedly created a danger towards the public generally, rather than an individual or group of individuals, holding a state actor liable for the injuries of foreseeable plaintiffs would expand the scope of the state-created danger theory beyond its useful and intended limits. Where, as here, the allegedly unlawful acts of the state actor affect only a limited group of potential plaintiffs, the potentially broad reach of the state-created danger theory is constrained by examining whether the plaintiff or plaintiffs were 'foreseeable' victims.

Morse, 132 F.3d at 913 n.12 (emphasis added). This passage counsels against reading too much into the Third Circuit's decision not to pronounce on the discrete-plaintiff requirement

in Morse. The Third Circuit appears to have accepted that the "limited group of potential plaintiffs" was sufficiently discrete in Morse, and the issue would turn on "whether the plaintiff or plaintiffs were 'foreseeable' victims." Id. Because the Third Circuit found the harm not foreseeable and not fairly direct, Morse does not support Defendants' position that the alleged state-created danger here was directed at the general public, as opposed to a discrete class of potential plaintiffs.

One analogous case from the Seventh Circuit provides further clarification of the discrete-plaintiff requirement in the context of drivers on public roads. In Reed v. Gardner, 986 F.2d 1122, 1123 (7th Cir. 1993), which was cited favorably in the Third Circuit's discussion of the relationship element in Morse,[4] police arrested the driver of a vehicle, leaving an intoxicated passenger to drive the car. Two hours later, the drunk passenger-turned-driver caused a head-on collision. Id. The district court dismissed the plaintiffs' claims, holding

---

[4] The discrete-plaintiff standard in this Circuit "was based in large part on the Seventh Circuit's decision in Reed . . . ." Crockett v. Se. Pa. Transp. Ass'n, No. 12-4230, 2013 WL 2983117, at *6 n.11 (E.D. Pa. June 14, 2013) (citing Morse, 132 F.3d at 913). The Crockett court found "the Seventh Circuit's subsequent interpretation of Reed to be particularly helpful in understanding the contours of the discrete class requirement." Id. (citing Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 828 (7th Cir. 2009), for the proposition that the discrete class in Reed was permissible because the plaintiffs "were within a small, defined group of potential victims" traveling on a single highway "only for a matter of hours").

that the police did not create a dangerous situation in this case because the first driver, who was arrested, herself was driving while intoxicated. Id. at 1124. The Seventh Circuit reversed in part and remanded because whether the original driver had been sober or drunk was not pleaded in the complaint, and the district court impermissibly reached outside of the pleadings to rule on the motion to dismiss. Id. In ruling that the plaintiffs could state a claim if the original driver had been sober, the Seventh Circuit considered the class of potential plaintiffs that the state had endangered: "While [the defendants] did not create the danger by buying [the drunk passenger] drinks and providing him with a car, they did take action under color of state law which rendered [the victims] and other motorists on Route 130 vulnerable to a dangerous driver." Id. at 1127. The court indicated that the claim would be valid, distinguishing cases that affected the general public, because "the immediate threat of harm has a limited range and duration," and individuals within that range at that time would be a limited, discrete class of potential plaintiffs. Id. The Seventh Circuit indicated that "defendants' lack of direct contact with the appellants does not necessarily preclude this action against them." Id. at 1126-27.

One district court in this Circuit, following Reed, found that drivers in a bounded area could constitute a discrete

20

class. _Estate of Pendelton ex rel. Pendelton v. Davis_, No. 06-
1945, 2007 WL 1300743, at *6 (M.D. Pa. May 3, 2007). In
_Pendelton_, an inmate at a prison work release facility was
permitted to drive his car, even though his license had been
suspended following a DUI conviction. _Id._ at *1. On the day in
question, he was operating his vehicle under the influence of
alcohol and caused a head-on collision. _Id._ at *2. The district
court held that the plaintiff failed to plead three of the
state-created danger elements, but found that "motorists and
passengers traveling in the vicinity of the instant Work Release
Center," near where the accident occurred, was a "sufficiently
discrete class of persons to satisfy the relationship element of
the state-created danger claim at the motion to dismiss stage."
_Id._ at *6 (emphasis in original).

Other courts in this Circuit have declined to find that
drivers and passengers on public roads constitute discrete
classes of plaintiffs for purposes of the state-created danger
doctrine. However, many of these cases present different factual
and legal claims than those alleged here. In _Solum v. Yerusalim_,
No. 98-4056, 1999 WL 395720 (E.D. Pa. June 17, 1999), _aff'd_, 211
F.3d 1262, at *1 (3d Cir. 2000), the plaintiffs sued employees
of the Pennsylvania Department of Transportation alleging that a
poorly designed road was unsafe. The district court ruled that a
class of plaintiffs composed of "drivers on the stretch of Route

21

1 where the fatal accident occurred" was "an unquantifiable and virtually unidentifiable mass of potential plaintiffs." Id. at *5. Because "Route 1 is a major traffic artery traveled by thousands daily," the proposed class was indistinguishable from the public in general. Id. Likewise, in Stover v. Camp, 181 F. App'x 305, 308 (3d Cir. 2006), a non-precedential opinion, the Third Circuit held that the plaintiffs could not sustain a state-created danger claim by alleging that a township "fail[ed] to improve the roads," because a "group of persons who regularly traveled on Atlas-Cherry Valley Road" did not constitute a "discrete class of persons." In Burnette v. City of Phila., No. 13-0288, 2013 WL 1389753, at *4-*6, (E.D. Pa. Apr. 5, 2013), the district court held that the plaintiff, who was "an every-day user of Roosevelt Boulevard," was not a member of a discrete class, when suing under the theory that the placement of bus stops and the dangerous habits of bus drivers constituted a state-created danger. The plaintiffs in Solum, Stover, and Burnette all sought to challenge existing conditions of roadways, and thus the claims were unbounded by time, let alone directly connected to a discrete, affirmative act by state actors that had foreseeable victims. In these three cases, there was no meaningful way to distinguish the plaintiffs from any member of the public who drove on those roads at any time, on

22

any day, and who experienced the same allegedly dangerous conditions.

Finally, in Watson v. Methacton Sch. Dist., 513 F. Supp. 2d 360, 364 (E.D. Pa. 2007), the defendant school district hosted an after-prom, all-night party, permitting students to depart by driving their own cars at 6 a.m. One student left the party, stopped for breakfast for 45 minutes or an hour, and then made two other stops, before falling asleep at the wheel and causing an accident. Id. at 364-65. He had driven close to 20 miles in the time span of two hours. Id. at 374. The district court granted summary judgment on the state-created danger claim, holding that the harm was not foreseeable and was not fairly direct, the state conduct did not shock the conscience, the allegedly objectionable conduct was an omission rather than an affirmative act, and the plaintiff was not a member of a discrete class. Id. at 374-78. In discussing the discrete class, the court stated that

> this case suffers from the same problems of breadth as the class that was rejected in Solum. The class proposed by Plaintiff would encompass all travelers within the "vicinity" of Methacton High School after the Party ended. Based on the uncontested facts, such a class would need to include drivers within a 19.3 mile radius of the high school during a period of time no less than two hours following the end of the Party.

Id. at 377. The court concluded that finding a discrete class on those facts would "extend the state-created danger doctrine beyond its useful intended limits." Id.

Here, Plaintiff was a foreseeable victim, in the tort sense, of Defendants' alleged action. She was driving on a public road, within the path of raging floodwater allegedly unleashed by Defendants, shortly after the floodgates opened, at a time (1:00 a.m.) when, it may be reasonably inferred, few vehicles use this road. Morse instructs district courts to consider foreseeability as the "ultimate test" in the discrete class analysis. Morse, 132 F.3d at 914. The purpose of this element is to circumscribe the number of potential plaintiffs stemming from any particular exercise of state authority and shield state actors from liability for any act for which any member of the general public could sue. See id. at 913 n.12; Phillips, 515 F.3d at 242. Thus, this case is distinguishable from Watson because there the plaintiff was not a foreseeable victim. Watson, 513 F. Supp. 2d at 374.

Another distinguishing fact is that, here, Defendants contemplated closing the Route 40, which could have prevented the harm to Ms. Sylvestri, but did not. Defendants thus were aware of the danger posed by their actions specifically to drivers on Route 40. By contrast, the defendants in Watson could not have prevented the danger of tired drivers by blocking one

24

road; the potential area or risk contemplated in Watson exceeded 1,100 square miles. The potential class of plaintiffs in Watson, therefore, was much broader than the potential class of plaintiffs here: those driving on a particular section of Route 40 on August 28, 2011, in the middle of the night, shortly after the release of flood water. While it is no doubt true that any licensed member of the public could have been driving on that road at that moment, it may be inferred from the Complaint that the number of drivers on that road at that particular time was indeed "only a limited group of potential plaintiffs." Morse, 132 F.3d at 913 n.12. Opening of the floodgates did not create an ongoing threat to the general public here in the way the alleged dangers did in Solum, Stover, and Burnette, and the area of risk contemplated here is far smaller than that in Watson. Unlike Solum and Burnette, in which the conditions complained of had existed for months or even years, Ms. Sylvestri was endangered by a new condition of raging floodwaters created that same night.

Taking Defendants' position to its logical extreme, a police officer could escape state-created danger liability for discharging his or her firearm in a crowded town hall building simply because any member of the public could have been in the building at that moment. Such a result would be unnecessarily restrictive, in light of Third Circuit precedent emphasizing (1)

foreseeability, (2) the need for only a limited group of potential plaintiffs, and (3) no requirement that the state have actual knowledge that a specific individual was placed in harm's way. See Morse, 132 F.3d at 913-14; Phillips, 515 F.3d 242.

Like the defendants in Reed, who created a dangerous condition on a particular road at a particular time by placing an intoxicated passenger behind the wheel, Defendants here allegedly created a dangerous condition on a particular road at a particular time by releasing flood water from the Dam which followed its course along the Salem River and across the roadway. There is a discrete class of potential plaintiffs who were exposed to those dangerous conditions. Therefore, the pleadings satisfy this element of the state-created danger doctrine.

**V.   CONCLUSION**

Plaintiffs have pleaded all four elements of a state-created danger claim. Defendants' arguments to dismiss the claim are unpersuasive. Therefore, Defendants' motion for judgment on the pleadings for Count III is denied. The Court will enter judgment for Defendants on all other counts, because Plaintiff no longer seeks to pursue them and because Plaintiff did not

comply with the notice requirements of the New Jersey Tort
Claims Act. An accompanying Order will be entered.


**March 11, 2014**                           **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge